Mr. Justice MILLER
 

 delivered the opinion of the court.
 

 The judges of the circuit have certified to this court five questions arising on the indictment. The first question is, whether the second count of the indictment is bad as being in itself repugnant, and the four other questions relate to a similar repugnancy in the statute under which the indictment is framed. As the count to which the first'question refers pursues the language of the statute, all the questions resolve themselves into the single one of whether the act, so far as it relates to altering and publishing forged or coun
 
 *436
 
 terfeit notes of the United States, is itself void for repugnancy.
 

 The objection is, that if the note which the party is charged with passing was, in the language of the statute, “ issued under the authority of this act, or heretofore issued under acts to authorize the issue of treasury notes or bonds,” it must necessarily be a valid or genuine note, and if it was not issued under the authority of some of these acts, the passing of the note is not made an offence by the law.
 

 There is some degree of plausibility in this hypercriticism at first blush, which, if it were sound, would make the act void for want of any meaning, a result which one of the first canons of construction teaches us to avoid if possible, and which is at war with the common sense, which assures us that the purpose of the act was to punish the making of counterfeits of the notes and bonds described in the statute. Nor is the criticism philologically just. The offence is described as the passing of false, forged, or counterfeited notes or bonds issued under the authority of the statute. We ai’e to give due weight to all the words employed in describing the instrument, and cannot reject the words
 
 false, forged,
 
 and
 
 counterfeited,
 
 if it is possible to adopt any reasonable construction which will permit them to stand. This is done by mentally supplying the ellipsis which is in general use in conversation or in writing in similar cases. We speak, for instance, of “ false diamonds.” According to the criticism we are considering this phrase has no meaning, because if the stones spoken of
 
 are
 
 diamonds they cannot be false, and if they are
 
 false
 
 they cannot be diamonds. But any one understands the meaning to be false stones which purport to be diamonds, or false similitude of diamonds. So we speak of a bank note. Now if the paper spoken of is a forgery it is not a bank note, which means an obligation of some bank to pay money. But here also the mind supplies the ellipsis which good usage allows, and understands that what is meant is a forged paper in the similitude of a bank note, or which on its face appears to be such a note. And in a similar manner we speak of a forged will. If the argu
 
 *437
 
 ment of defendant’s counsel is sound there can be no such thing as a forged will, receipt, note, or bond, because if forged they are void and therefore not notes, wills, bonds, &c. In fact the phrase “ void will” or “ void note,” is, according to this argument, a solecism,- because the instrument cannot be at once the will or note of the party, and be void.
 

 The use of the words false, forged, and counterfeit, in the statute, imply, therefore, when applied to any of the obligations of government mentioned, that it purports to be such an instrument, but is not genuine or valid. And so are the authorities. See 2 Bussell on Crimes, 801; East’s Pleas of the Crown, 950.
 

 It is conceded, that if the statute had, in describing the offences, called the instrument uttered a note,
 
 purporting
 
 to be issued under the authority of the statute, the difficulty would have been removed. In the case of
 
 Rex
 
 v.
 
 Birch and
 
 Martin, the indictment charged them “ with publishing as true, a false, forged, and counterfeited paper writing,
 
 purporting
 
 to be the last will of Sir Andrew Chadwick.” It was objected that the indictment was bad, because “ it should have been said that they forged a certain will,” which was the language of the statute, and
 
 not a paper writing
 
 purporting to be a will. “ But,” says Mr. East, who, in his Pleas of the. Crown,
 
 *
 
 makes a full report of the case, “ a variety of precedents were found, so that the judges held it to be good.” But it is apparent, from the exception taken, and from the language of East and of Bussell, that the usual mode of charging the offence was to say that the prisoner had forged the will or other paper, and that either form is good.
 

 The case of
 
 United States
 
 v.
 
 Cantrell
 
 is relied on as holding an opposite doctrine to that we have here presented. That case was submitted without argument, and the report says that the opinion of the court was that the judgment should be arrested for the reasons assigned in the record. These reasons are that the indictment was repugnant, because it
 
 *438
 
 charged the prisoners with having published as true
 
 “
 
 a certain false, forged, and counterfeited paper,
 
 purporting
 
 to be a bank bill of the United States for ten dollars,
 
 signed
 
 by Thomas Willing, president, and G. Simpson, cashier.” And because the statute relating to the charge set forth in the indictment is inconsistent, repugnant, and void. In this statement, the words signed and purporting are italicized, and the court may have held the indictment bad because the former word was used, thus sustaining the objection fnade in
 
 Rex
 
 v.
 
 Birch and Martin.
 
 Or it may have held that the language of the indictment amounted to an averment, that the bill charged to be forged was signed in fact by the president and cashier of the bank, in which case it could not have been a forgery. Or it may possibly have thought that under the peculiar language of that statute, which differs materially from the one under consideration, they were bound to hold it void for repugnancy. However that may be, we do not consider the case,'as it is reported, an authority for holding the statute void which we are called on to construe.
 

 To the first and third questions, and the first branch of the second, we answer, No.
 

 To the fourth and fifth, and the. second branch of the second, we answer, Yes.
 

 *
 

 Page 950.